UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **Z TECHNOLOGIES CORPORATION,**<br>Plaintiff,<br><br>vs.<br><br>**BYK USA, INC., et al.,**<br>Defendants. | **2:24-CV-12557-TGB-DRG**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NOURYON SURFACE CHEMISTRY, LLC'S MOTION TO DISMISS (ECF NO. 50)**<br><br>**AND DENYING PLAINTIFF'S MOTION TO FILE A THIRD AMENDED COMPLAINT AS TO DEFENDANT NOURYON SURFACE CHEMISTRY, LLC (ECF NO. 58)** |

Plaintiff Z Technologies Corporation ("Z Tech") brings this action against Defendants BYK USA, Inc. ("BYK"), Omya Specialty Materials Inc. ("Omya"), and Nouryon Surface Chemistry, LLC ("Nouryon"), alleging the following counts: (I) Breach of Contract against BYK; (II) Breach of Express Warranty, brought under M.C.L. § 440.2313, against BYK; (III) Breach of Implied Warranty of Merchantability, brought under M.C.L. § 440.2314, against BYK; (IV) Breach of Implied Warranty for a Particular Purpose, brought under M.C.L. § 440.2315, against BYK; (V) Fraudulent Misrepresentation against BYK; (VI) Fraudulent Misrepresentation against Omya and Nouryon; (VII) Fraudulent

Inducement against BYK; (VIII) Tortious Interference with a Business Relationship and/or Expectancy against all defendants; (IX) Silent Fraud against all defendants; (X) Unjust Enrichment against all defendants; and (XI) Conspiracy against all defendants. ECF No. 49.

Defendant Nouryon has filed a motion to dismiss Z Tech's Second Amended Complaint. ECF No. 50. Z Tech has filed a motion for leave to file a third amended complaint. ECF No. 58.

For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Nouryon's motion to dismiss (ECF No. 50), **DENIES AS FUTILE** Z Tech's motion to amend as to Nouryon (ECF No. 58), and **DISMISSES** all but Z Tech's unjust enrichment claim against Nouryon **WITH PREJUDICE**.

# I. BACKGROUND

## 1. Relevant Factual Background

In considering Defendant Nouryon's motion to dismiss, the Court accepts as true factual allegations contained in Z Tech's Second Amended Complaint.

### *i. The Parties*

Z Tech is a manufacturer of industrial paints and other products designed to withstand extreme conditions over long periods without requiring maintenance or refurbishment for two to ten years, depending on the product and application. ECF No. 49, ¶ 1. Z Tech develops and manufactures paints and coatings designed to meet the toughest

challenges in component performance and protection. *Id.*, ¶ 32. Its products are used in various industrial and manufacturing applications that depend on a consistent, long-lasting protective layer to safeguard the final product from physical and chemical damage. *Id.*

BYK is a global supplier of specialty chemicals, particularly those used in the manufacture of industrial paints and other coatings. *Id.*, ¶ 41. BYK is one of the world's leading manufacturers of additives and measuring instruments. *Id.*, ¶ 8. The company's additives and differentiated solutions are designed to optimize product and material properties, as well as production and application processes. *Id.*, ¶ 41. BYK's products are marketed for their quality and consistency. *Id.*

Omya is BYK's exclusive U.S. supplier of BYK 155. *Id.*, ¶ 104.

Nouryon produces a wide variety of chemicals and has hundreds of locations worldwide. *Id.*, ¶ 9. Plaintiff alleges that Nouryon lacks "BYK's expertise and the ability to maintain the same level of quality control over numerous types of chemicals at hundreds of facilities." *Id.* "[T]he product that Nouryon produces is much more likely to be of lower quality and to have inconsistent amounts of each component." *Id.*

Z Tech and BYK have been doing business since the inception of Z Tech in 1996. *Id.*, ¶ 42. This action covers events that occurred from approximately 2015 to the present. *Id.*, ¶ 43. Before the events giving rise to this suit, Z Tech had not experienced any significant issues with BYK's products. *Id.*, ¶ 44.

Z Tech alleges that "when Z Tech incorporates a new component into its production processes, its primary consideration is the quality of the new product and the manufacturer's ability to continue to manufacture the same product with unaltered chemistry for the unforeseeable future." *Id.*, ¶ 6. Thus, "Z Tech is willing to pay a premium for a product from a company with a proven history of excellence, such as BYK." *Id.*, ¶ 7.

*ii. BYK 155 and BYK 155/50*

BYK 155 is a product of BYK. *Id.*, ¶ 46. Z Tech has been using BYK 155 in its paint manufacturing for approximately the last 15 to 20 years. *Id.*, ¶ 3. The paint manufactured by Z Tech using BYK 155 is intended for use in rugged applications such as manufacturing and other heavy industries, where the color's uniformity, protective properties, and ability to maintain these properties consistently over time are crucial. *Id.*, ¶ 48.

Until the events giving rise to this complaint, Z Tech had always placed its orders by referring to BYK 155, and Omya and BYK fulfilled all such orders with BYK 155. *Id.*, ¶ 47.

Sometime in late 2021 or early 2022, although Z Tech only ordered the product labelled BYK 155, Z Tech began receiving a product labelled BYK 155/50. *Id.* at PageID.498–99 n.2. BYK 155 and BYK 155/50 are not chemically identical and are not the same product. *Id.*, ¶ 24(b); *id.*, ¶ 51.

Beginning in 2022, Z Tech started receiving complaints from its customers about paint manufactured using BYK 155/50. *Id.*, ¶ 49.

Specifically, customers were experiencing "cracking, fading, premature corrosion, and gassing." *Id.*, ¶ 55. Z Tech alleges that there "does not appear to be any pattern, rhyme, or reason why Z Tech received one variety from BYK [155] on one date and a different variety on another date." *Id.*, ¶ 64.

In response to its customers' complaints, Z Tech began an investigation of the paint. *Id.*, ¶ 50. As a result of this investigation, Z Tech learned that the additive used to produce the paint that was failing carried a label that Z Tech had never seen before: BYK 155/50. *Id.* Experts employed by Z Tech analyzed the products involved and concluded that the paint made with BYK 155/50 began to fail immediately after the customer received the painted component. *Id.*, ¶ 58. In fact, "[w]ithin days or weeks of application, the paint would begin to lose most of its pigments as it dried up and flaked off." *Id.*, ¶ 85.

BYK "refused to admit that there is any problem with any of the BYK 155 product varieties," including BYK 155/50. *Id.*, ¶ 52. BYK claimed that "BYK 155/50 is identical to BYK 155" and that there was "no chemical difference" between the two products. *Id.,* ¶¶ 52, 54.

Z Tech alleges that "Defendants chose . . . to remain silent" instead of assisting "Z Tech in resolving the issue" during the past two years. *Id.,* ¶ 13.

*iii. Outsourcing of BYK 155 to Nouryon*

Z Tech alleges that this case arises from "two intersecting unlawful

schemes carried out by BYK, Omya, and Nouryon," which "sought to conceal an alteration in the product provided to Z Tech and, separately, to conceal the product's manufacturer." *Id.*, ¶ 15.

BYK has admitted that it did not manufacture BYK 155. *Id.*, ¶¶ 11, 26. At some point, BYK "outsourced the manufacture of BYK 155 to a third party, Nouryon, without informing its customers and, in particular, Z Tech." *Id.*, ¶ 8. Z Tech does not allege when BYK outsourced the manufacture of BYK 155 to Nouryon, stating that it "does not know when BYK began outsourcing BYK 155 but will determine the specific date during discovery." *Id.* at PageID.520 n.4.

There was no marking on the containers disclosing Nouryon's involvement in the production of the product. *Id.*, ¶ 11. In fact, Z Tech alleges that BYK outsourced the manufacture of BYK 155 to Nouryon "while retaining BYK 155's name, logo, and overall style on all documents and safety information relating to the product, including the Safety Data Sheet (SDS or [Certificate of Analysis ('COA')])." *Id.*, ¶ 24(a). Later in the complaint, Z Tech alleges that "each COA associated with each container appears to originate from BYK, as it contains BYK's name, logo, and other identifying information. Importantly, the containers do not bear any other manufacturer's name or information." *Id.*, ¶ 107.

*iv. Alleged Conspiracy*

Z Tech alleges that

> Defendants' fraud and misrepresentations concealed the

> following: (a) BYK did not manufacture the product at issue, BYK 155, but instead, BYK outsourced the production to an unrelated chemical manufacturer, Nouryon, which does not specialize in the same type of products as BYK, (b) Defendants' delivery of numerous containers of a product that has a different chemical structure compared to BYK 155, even though Defendants claim that the product is identical to BYK 155, and (c) there was no marking on the containers disclosing Nouryon's involvement in the production of the product.

*Id.*, ¶ 11. Z Tech alleges that "BYK, with the assistance of its co-conspirators, Omya and Nouryon, ensured that its customers, including Z Tech, continued to believe that BYK was manufacturing the product." *Id.*, ¶ 10.

Z Tech alleges that "Defendants acted in concert to supply Plaintiff Z Tech with a chemical product designated as 'BYK 155/50'" and that "Defendants intentionally provided BYK 155/50 to Z Tech despite knowing, or having reason to know, that the product failed to meet Z Tech's required specifications and would not perform according to Z Tech's documented expectations." *Id.*, ¶¶ 29, 30.

As to what occurred among the Defendants, Z Tech alleges that:

> (a) Defendant BYK ordered a changed product from Nouryon;
> (b) Nouryon changed the product without notifying BYK of the change;
> (c) Nouryon changed the product and notified BYK of the change;
> (d) Nouryon shipped the containers without any SDS attached;
> (e) Nouryon shipped the container with an SDS attached

which was removed by BYK, or

(f) BYK ordered unlabeled containers from Nouryon, a clear indication to Nouryon that BYK was actively deceiving its customers.

*Id.*, ¶ 30.

*v. Nouryon's Alleged Role*

The Second Amended Complaint describes the role of the three Defendants as follows:

> Each of the Defendants is involved in the scheme: Nouryon manufactures the product, filling containers that have BYK's labeling on them, not Nouryon's. Nouryon, therefore, knows that whoever receives the product from Omya will assume the manufacturer to be BYK. A purchaser, in this case Plaintiff, issues a purchase order to BYK, and Omya delivers the product, carrying BYK's labeling, to a purchaser who has no reason to suspect that the product is made by anyone but BYK. Then, BYK, as the frontman, controls the whole operation. In this way, Omya, the distributor, also acquiesces in and silently misrepresents that the product is a BYK product, even though the manufacturer is Nouryon.

*Id.*, ¶ 39.

Furthermore, Z Tech alleges that Nouryon manufactures "the additive and knows that nothing on the containers indicates that Nouryon is the manufacturer. . . . Nouryon has marked the containers with BYK's information to make it appear that BYK, not Nouryon, manufactured the product." *Id.*, ¶ 105.

Z Tech alleges that "[a] substantial number, if not all, of the statements made by Omya and Nouryon that affix or refer to the

container and/or its contents, such as the documentation, which was in part created by Nouryon, that Omya provides to Z Tech are false and misleading." *Id.*, ¶ 106. Z Tech further alleges that "[t]he COAs thus contain false statements made by Nouryon and Omya, on which they intend Z Tech to rely. The statements are made so that Z Tech will continue to believe that the additive it is receiving has been manufactured by BYK, when in fact, Nouryon is the actual manufacturer." *Id.*, ¶ 108.

Elsewhere, however, Z Tech alleges that "*BYK* generated the COA to conceal that BYK had outsourced the manufacture of Z Tech's additive to Nouryon." *Id.*, ¶ 132 (emphasis added).

Neither Nouryon nor Omya has ever notified Z Tech that BYK is not the manufacturer of the BYK product purchased by Z Tech. *Id.*, ¶ 108.

Z Tech alleges that it "knew nothing about Nouryon." *Id.*, ¶ 61. The Second Amended Complaint does not allege that Z Tech and Nouryon communicated directly with each other at any time.

*vi. Alleged Damages*

Z Tech alleges that the damages and other effects on its business "are numerous and wide-ranging, from the millions of dollars in lost customers and sales to the implementation of more robust health and safety measures for its employees, as well as the time and resources spent to find a replacement supplier, among other impacts." *Id.*, ¶ 25.

As to the fraudulent misrepresentation count, Z Tech alleges that

it "incurred damages by providing its customers with paint that did not contain a BYK-produced additive, but an additive manufactured by Nouryon, which 'is a leader in providing high-performance beauty technologies to the personal care industry.'" *Id.*, ¶ 110 (citation omitted).

As to the tortious interference count, Z Tech alleges that "Defendants' failure to inform Z Tech of the change in formula interfered with Z Tech's relationship with its customers, resulting in the loss of current customers and the inability to attract new ones." *Id.*, ¶ 126.

As to the unjust enrichment count, Z Tech alleges that "BYK received a monetary benefit from Z Tech but failed to provide a reciprocal benefit to Z Tech [and that the] other co-conspirators, Omya and Nouryon, have likewise received the same benefit under the conspiracy theory." *Id.*, ¶ 138.

### 2. The Proposed Third Amended Complaint

On August 6, 2026, Z Tech filed a motion for leave to file a third amended complaint. ECF No. 58. The proposed pleading adds one count—alleging a violation of the federal RICO statute, 18 U.S.C. § 1962(c). *See* ECF No. 58-1, PageID.660–65. As to Nouryon, the proposed pleading is otherwise materially identical to the Second Amended Complaint. Each allegation quoted in the factual background section of the Second Amended Complaint, with the exception of four footnotes, is reproduced verbatim or with immaterial changes in the Proposed Third Amended Complaint.

### 3. Procedural History

Z Tech initiated suit on September 27, 2024. ECF No. 1. On August 29, 2025, Z Tech filed the First Amended Complaint. ECF No. 35.

On November 10, 2025, Nouryon filed a motion to dismiss the First Amended Complaint. ECF No. 41. This motion raised substantially the same arguments that are raised in Nouryon's present motion to dismiss, as well as other arguments.

In response, on January 12, 2026, Z Tech filed the operative Second Amended Complaint. ECF No. 49.

On February 16, 2026, Nouryon moved to dismiss the Second Amended Complaint. ECF No. 50. Z Tech responded on March 30, 2026, ECF No. 53, and on April 14, 2026, Nouryon replied, ECF No. 56.

In Z Tech's response brief, Z Tech repeatedly asserted that it intended to make another request to amend the complaint to include allegations that the Defendants were operating a RICO enterprise. "RICO" refers to the Racketeer Influenced and Corrupt Organizations Act, primarily a federal criminal statute, which also has a civil analogue. ECF No. 53, PageID.569 n.1 ("Thus, contemporaneously with the filing of this Response, Z-Tech will request the Court to permit it to amend its complaint to include RICO allegations against all Defendants."). Z Tech argues that the allegation contained in the forthcoming amended complaint "should assist Nouryon in its understanding of the specific conduct at issue in this case." *Id.* In its response, Z Tech also appears to

reference factual allegations not contained in Plaintiff's Second Amended Complaint. *See*, *e.g.*, ("They are each distinct entities operating an enterprise wherein each plays a specially designed role that takes advantage of the type of work performed by the legitimate parts of their companies. In addition, they have engaged in numerous instances of fraud involving the same schemes and the same victims.").

No motion for leave to amend accompanied Z Tech's response. On July 31, 2026, the Court entered an order noting that no such motion had been filed and directing that "[i]f Plaintiff wishes to do so, it must file such a motion, with attached proposed amended complaint, by August 6, 2026." ECF No. 57, PageID.613. The Court noted that "[f]ailure to do so will constitute a waiver of Plaintiff's right to amend the complaint in response to the Court's forthcoming order on Defendant Noury[o]n's motion to dismiss, and a dismissal, if any, will be with prejudice." *Id.*

On August 6, 2026, Z Tech filed a motion for leave to file a third amended complaint. ECF No. 58.

## II. STANDARD OF REVIEW

### 1. Standard for a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual

allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.2007)). The Court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) ("To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir.

2015) (citation omitted).

### 2. Standard for a Motion to File an Amended Complaint

Under Federal Rule of Civil Procedure 15(a)(2), a party who can no longer amend its complaint as of right "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

Granting a motion for leave to amend the complaint is a matter "within the discretion of the District Court." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Though discretionary,

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Id.*

"[A] proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 421 (6th Cir. 2000). If the Court concludes that the amended pleading could not withstand a motion to dismiss, "the court may deny the motion to amend as futile and save the parties and the court the expense of having to confront a claim doomed to failure from its outset." *Spigno v. Precision Pipeline, L.L.C.,* 59 F. Supp. 3d 831, 834 (E.D. Mich. 2014) (Lawson, J.).

### 3. Pleading Standard Under Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead "with particularity the circumstances constituting fraud." To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "specify the statement they contend is fraudulent, identify the speaker, time, and location of the statement, and explain why the statement is indeed untrue or a misrepresentation." *Rautu v. U.S. Bank*, 557 Fed. Appx. 411, 414 (6th Cir. 2014). In other words, a plaintiff must "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003)). "At a minimum, Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson*, 447 F.3d at 877 (cleaned up).

## III. DISCUSSION

The Second Amended Complaint makes the following counts against Nouryon: (VI) Fraudulent Misrepresentation; (VIII) Tortious Interference with a Business Relationship and/or Expectancy; (IX) Silent Fraud; (X) Unjust Enrichment; and (XI) Conspiracy. ECF No. 49.

Z Tech's Proposed Third Amended Complaint reasserts all five

counts against Nouryon and adds a claim under the Federal RICO Act against all three Defendants. ECF No. 58-1. In the proposed pleading, the RICO count is numbered Count XI and the conspiracy count is renumbered Count XII.

Nouryon raises the following arguments in their motion to dismiss:

- Z Tech's fraud- and misrepresentation-based claims (Counts VI, IX, X, and XI) should be dismissed because the claims are legally deficient and not pled in accordance with Fed. R. Civ. P. 9(b);
- Z Tech's tort-based claims (Counts VI, VIII, IX, and XI) should be dismissed because they seek recovery for economic losses arising from alleged product performance issues and are barred by the economic loss doctrine;
- Z Tech's misrepresentation-based claims (Counts VI, IX, X, and XI) should be dismissed because Z Tech fails to allege facts plausibly establishing that Nouryon authorized, controlled, or manifested an agency relationship with any downstream seller;
- Z Tech's fraudulent misrepresentation claim (Count VI) should be dismissed because Z Tech alleges no direct misrepresentation from Nouryon to Z Tech;
- Z Tech's silent fraud claim (Count IX) should be dismissed because there is no relationship between Nouryon and Z Tech giving rise to a duty to disclose;
- Z Tech's tortious interference claim (Count VIII) should be dismissed because Z Tech fails to allege any knowledge, improper motive or wrongful conduct by Nouryon;
- Z Tech's unjust enrichment claim (Count X) should be dismissed because there was no direct benefit conferred by Z Tech to Nouryon and other equitable remedies exist;
- Z Tech's conspiracy claim (Count XI) should be dismissed because Z Tech's underlying fraud-based claims fail, and

> because the conspiracy allegations are not pled with requisite specificity.

ECF No. 50.

Below, the Court will address each count of the Second Amended Complaint, and Nouryon's arguments directed at it, in turn. The Court also evaluates whether the Proposed Third Amended Complaint would cure the identified defects. Because proposed Count XI—alleging a violation of the federal RICO statute—has no counterpart in the operative pleading, the Court addresses it separately.

**1. Count VI—Fraudulent Misrepresentation**

In Count VI, Z Tech alleges fraudulent misrepresentation against Omya and Nouryon. ECF No. 49, ¶¶ 103–11. Specifically, Z Tech alleges that "Nouryon is manufacturing the additive and knows that nothing on the containers indicates that Nouryon is the manufacturer. Instead, Nouryon has marked the containers with BYK's information to make it appear that BYK, not Nouryon, manufactured the product." *Id.*, ¶ 105. Z Tech further alleges that "[a] substantial number, if not all, of the statements made by Omya and Nouryon that affix or refer to the container and/or its contents, such as the documentation, which was in part created by Nouryon, that Omya provides to Z Tech are false and misleading." *Id.*, ¶ 106.

As to the certificates of analysis (or COAs), Z Tech alleges that each "appears to originate from BYK, as it contains BYK's name, logo, and

other identifying information." *Id.*, ¶ 107. Thus, Z Tech alleges, the certificates "contain false statements made by Nouryon and Omya, on which they intend Z Tech to rely." *Id.*, ¶ 108.

As to reliance and damages, Z Tech alleges that it "relied on the statements made by Omya and Nouryon in continuing to purchase BYK 155, year after year," and that it "incurred damages by providing its customers with paint that did not contain a BYK-produced additive, but an additive manufactured by Nouryon." *Id.*, ¶¶ 109–10.

The corresponding paragraphs of the Proposed Third Amended Complaint are materially identical. ECF No. 58-1, ¶¶ 102–10.

*i. Economic Loss Doctrine*

Nouryon argues that the economic loss doctrine bars Z Tech's tort claims. ECF No. 50, PageID.547–51.

As described by the Sixth Circuit,

> Michigan's economic-loss doctrine prohibits buyers from bringing tort suits against sellers for economic losses arising from the product that the parties exchanged in a commercial context. The phrase "economic loss" generally refers to non-physical commercial losses (like the money spent on a faulty product or the lost sales caused by its poor performance) in contrast to the injuries that have long been the central domain of tort law: physical injuries "to the plaintiff's person or property (property other than the product itself)."

*Crossing at Eagle Pond Apartments, LLC v. Lubrizol Corp.*, 790 F. App'x 775, 777 (6th Cir. 2019) (citation omitted). In other words, the economic

loss doctrine provides that "where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 520 (1992) (citation omitted). As the Sixth Circuit has explained,

> Courts developed the economic-loss doctrine to keep a clear line between tort and contract law, two common-law areas that serve distinct purposes. On the one hand, tort law imposes duties of care that all people owe to each other (whether or not they have a contractual relationship) in order to discourage negligent conduct and the physical injuries that it can cause. Designed to ameliorate the "accident problem," tort law generally does not allow parties to reallocate through their contracts the substantive legal rules that it creates. On the other hand, contract law operates on the premise that commercial actors, because of their ability to bargain for the terms of the sale, will be able to allocate the risks and costs of a product's potential nonperformance. Thus, contracting parties, through their negotiations, generally may allocate either to the buyer or to the seller the economic risk that a product will prove to be faulty. If the buyer believes that it can more cheaply ensure against that risk through private insurance, it can agree to disclaimers or a limitation of remedies in exchange for a lower price. If the buyer cannot do so, it can seek warranties from the seller in exchange for a higher price.

*Lubrizol Corp.*, 790 F. App'x at 777–78 (cleaned up).

Here, the economic loss doctrine bars Count VI.

First, Z Tech's claim arises from the commercial sale of goods: Z Tech is a manufacturer of industrial paints and other products that

purchased BYK 155 as a component in its paint manufacturing. ECF No. 49, ¶¶ 1, 3. Z Tech acquired BYK 155 using purchase orders. *Id.*, ¶ 39. In fact, Z Tech's claims against BYK arise under the Michigan Uniform Commercial Code. *See*, *e.g.*, *id.* ¶¶ 72–79.

Second, the losses Z Tech alleges are purely economic: Z Tech alleges "lost customers and sales," "the implementation of more robust health and safety measures for its employees," "time and resources spent to find a replacement supplier," and the cost of "thousands of gallons of Z Tech's paint being unusable." *Id.*, ¶¶ 25, 92, 110. These losses are the exact kind of "non-physical commercial losses (like the money spent on a faulty product or the lost sales caused by its poor performance)" that can be allocated through commercial negotiations. *Lubrizol Corp.*, 790 F. App'x at 777.

Simply put, every damage alleged by Z Tech is based on the theory that the purchased product "is not working properly." *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 368 (1995). Accordingly, Z Tech's "remedy is said to be in contract alone." *Id.*

And in fact, this remedy is available to Z Tech: Z Tech contracted with BYK for the purchase of BYK 155, ECF No. 49, ¶ 67, and has brought claims against BYK for breach of contract and breach of express and implied warranties arising from the same conduct alleged here, *id.*, ¶¶ 66–93. The economic loss doctrine does not extinguish Z Tech's remedy for these losses; it directs that remedy to the body of law under

which the parties allocated the risk, and to the party with which Z Tech contracted.

The absence of a contract between Z Tech and Nouryon does not remove the claim from the doctrine's reach. Simply put, the economic loss doctrine applies even when there is no direct privity between the consumer and the defendant manufacturer. *Murphy v. The Proctor & Gamble Co.*, 695 F. Supp. 2d 600, 606 (E.D. Mich. 2010) (Whalen, J.) (collecting cases); *Shaker v. Champion Petfoods USA Inc.*, 625 F. Supp. 3d 621, 632 (E.D. Mich. 2022) (Michelson, J.) (rejecting argument "that the economic-loss doctrine should not apply because [plaintiff] did not negotiate with [defendant] and so could not have negotiated the allocation of risk as to the quality of the dog food"). As the Sixth Circuit explained, the economic loss doctrine applies to bar a plaintiff's "tort suit against a product manufacturer even though the plaintiff did not directly contract with the manufacturer . . . . because the commercial plaintiff may protect itself through ordinary contractual remedies, even if those remedies run against an entity in the distribution chain other than the manufacturer itself." *Lubrizol Corp.*, 790 F. App'x at 778–79.

Nor does the fact that this claim is a fraud claim alter the analysis. The economic loss doctrine generally applies to fraud cases. *See Shaker*, 625 F. Supp. 3d at 633 (applying the economic loss doctrine to fraudulent misrepresentation and fraudulent concealment claims). Under Michigan law there is only one kind of fraud claim not barred by the economic loss

doctrine: fraud in the inducement. *Huron Tool & Eng'g Co.*, 209 Mich. App. at 371 ("fraud in the inducement" is "the only kind of fraud claim not barred by the economic loss doctrine"); *accord Shaker*, 625 F. Supp. 3d at 633.

Nor does the "fraud in the inducement" exception apply to the claims Z Tech has brought against Nouryon. That exception only applies when the alleged fraud is unrelated to the "quality and character of the goods sold." *Shaker*, 625 F. Supp. 3d at 633. Here, the alleged fraud concerns the quality and character of the goods sold: the chemical difference between BYK 155 and BYK 155/50 and that the product was manufactured by Nouryon instead of BYK. Accordingly, and as Z Tech acknowledges, *see* ECF No. 53, PageID.586 ("Since Z Tech never signed a contract with Nouryon, it could not allege fraudulent inducement against it."), the fraud in the inducement exception does not apply.

This conclusion holds even as to the allegation that BYK 155 was manufactured by Nouryon rather than BYK. Michigan's Uniform Commercial Code confirms as much: an express warranty is created by "[a]n affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" or "[a] description of the goods which is made part of the basis of the bargain." M.C.L. § 440.2313(1). A representation about who manufactured a product relates to that product.

In fact, Z Tech's own pleadings treat the representation about who

manufactured BYK 155 as a bargained-for attribute of the product. Z Tech alleges that BYK "created an implied warranty of merchantability by associating BYK 155 with the company's long history of manufacturing high-quality products." ECF No. 49, ¶ 84. A representation that Z Tech pleads as the basis of its warranty claims cannot be extraneous to the parties' commercial dealings.

Z Tech's main response is that the economic loss doctrine does not apply because "the main factor triggering the doctrine is the plaintiff's ability to analyze the facts so that its decision reflects the true risk, ensuring the contract is fair to everyone involved. This means the risk has been properly assessed and fairly divided among the contracting parties." ECF No. 53, PageID.572–73. Here, "Defendants' fraud prevented Z Tech from obtaining the necessary information to assess the risks of the contract." *Id.* at PageID.582.

Thus, Z Tech argues "[b]ecause the Defendants themselves prevented Z Tech from gaining knowledge about the nature and risks presented by the purchased product, the economic loss doctrine cannot bar Z Tech's claims." *Id.* at PageID.588. Plaintiff argues that "the proper inquiry when applying the economic loss doctrine to a fraud claim is whether a plaintiff could have protected its interests through the contract or whether the plaintiff was prevented from making a free and informed decision due to the defendant's fraud." *Id.* (citing *Woodland Harvesting, Inc. v. Georgia Pacific Corp.*, 693 F. Supp. 2d 732, 741 (E.D. Mich. 2010)).

The Court does not agree with this argument.

Z Tech *could have*—and indeed *did*—protect its interest through a contract. As discussed earlier, Z Tech contracted with BYK for the purchase of BYK 155, ECF No. 49, ¶ 67, and has brought claims against BYK for breach of contract and breach of express and implied warranties arising from the same conduct alleged here, *id.*, ¶¶ 66–93. In fact, Z Tech alleges that BYK "created an implied warranty of merchantability by associating BYK 155 with the company's long history of manufacturing high-quality products." *Id.,* ¶ 84. Breach of this warranty is a breach of a contract. *Cf. Plymouth Pointe Condo. Ass'n v. Delcor Homes-Plymouth Pointe, Ltd.*, No. 233847, 2003 WL 22439654, at *5 (Mich. Ct. App. Oct. 28, 2003) ("A breach of warranty is essentially a breach of contract.").

In certain respects, Z Tech's argument is simply "fraud in the inducement" by another name. It is true that where "the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior"—the economic loss doctrine does not apply. *Huron Tool & Eng'g Co.*, 209 Mich. App. at 373. However, the economic loss doctrine *does* apply "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold" because there "the other party is still free to negotiate warranty and other terms to account for possible defects in the goods." *Id.*

The misrepresentation Z Tech attributes to Nouryon—that BYK

manufactured the additive—concerns the character of the goods sold. Z Tech's ability to negotiate over that characteristic was not limited or foreclosed in any way. In fact, Z Tech alleges that it *did* in fact negotiate over that quality: Z Tech alleges that "much of the premium that Z Tech agreed to pay for additive manufactured by BYK was based on BYK's ability to manufacture large quantities of materials that remain unchanged for 20 or 30 years or more." ECF No. 49, ¶ 91. Z Tech further alleges that BYK "created an implied warranty of merchantability by associating BYK 155 with the company's long history of manufacturing high-quality product." *Id.,* ¶ 84. Now, Z Tech sues BYK for breach of the resulting warranties. Thus, Z Tech was able to protect itself through negotiations.

For these reasons, Z Tech's fraudulent misrepresentation claim is barred by the economic loss doctrine. Accordingly, Count VI must be **DISMISSED** as to Nouryon.

Because the economic loss doctrine bars Count VI, the Court need not reach Nouryon's remaining arguments. However, the Court notes that Count VI would independently fail because, as discussed below, Z Tech does not allege that the misrepresentation it attributes to Nouryon caused the loss it claims.[1]

Under Michigan law, the elements of actionable fraud require that

---

[1] Nouryon raised this argument, ECF No. 50, PageID.552, and Z Tech failed to respond.

the plaintiff acted in reliance on the misrepresentation and "thereby suffered injury." *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 555 (2012) (citation omitted). Accordingly, to be actionable, the fraudulent misrepresentation must be the proximate cause of the harm to the plaintiff. *Rosenblatt v. John F. Ivory Storage Co.*, 262 Mich. 513, 517 (1933). In other words, the "loss [must] "gr[o]w out of the very subject-matter of the fraud." *Id.* at 515.

The misrepresentation Z Tech attributes to Nouryon concerns the identity of the producer. However, the loss Z Tech alleges concerns the performance of the product—that BYK 155/50 was inferior to BYK 155. Z Tech alleges that BYK did not manufacture BYK 155 and that it experienced no significant issues with BYK's products for years prior to the dispute. Z Tech alleges that the purported fraudulent misrepresentation—that BYK actually manufactured the additive—appeared both on products that performed as expected and on products that failed to meet quality standards and therefore caused Z Tech's losses. Thus, the challenged misrepresentation (the identity of the producer) is unrelated to the cause of the injury or harm Z Tech experienced (the losses arising from BYK 155/50's failure to perform as desired). In other words, Plaintiff's reliance on the representation that BYK produced BYK 155 and BYK 155/50 did not cause Z Tech to suffer the injury it alleges: that BYK 155/50 failed to perform. Accordingly, Count VI would fail on this ground as well.

*ii. Proposed Third Amended Complaint*

The same analysis resolves Z Tech's motion for leave to amend as to this count. Count VI of the Proposed Third Amended Complaint is identical to Count VI of the Second Amended Complaint in every respect material here. ECF No. 49, ¶¶ 103–111; ECF No. 58-1, ¶¶ 102–110. Nor is there a material difference in the remainder of the pleadings that would weigh on the disposition of this count.

Accordingly, for the same reasons as articulated above, Count VI of the Proposed Third Amended Complaint would be barred by the economic loss doctrine. Thus, leave to amend as to Count VI is **DENIED AS FUTILE** as to Nouryon.

*iii. Dismissal with Prejudice*

Z Tech has had the benefit of Nouryon's arguments through two rounds of briefing and two opportunities to amend in response to them. The Proposed Third Amended Complaint is what Z Tech would plead if given leave, and it reproduces Count VI verbatim in every respect material here. Thus, the Court need not predict whether Z Tech *could* cure the defects in this count. Z Tech has put its best foot forward as to this claim, and it is not sufficient as to Nouryon. In any case, the defect is not one that repleading could cure. The problem with Count VI turns on the alleged loss and the nature of the claim, defects an amendment could not cure. Accordingly, Count VI is dismissed **WITH PREJUDICE** as to Nouryon.

### 2. Tortious Interference with a Business Relationship and/or Expectancy

In Count VIII, Z Tech alleges tortious interference with a business relationship and/or expectancy against all defendants. ECF No. 49, ¶¶ 120–29. Specifically, Z Tech alleges that "Defendants had a duty to inform Z Tech of the change in the formula for the product that Z Tech was incorporating into its paints to be sold to third parties, and Defendants failed to do so." *Id.*, ¶ 125. Z Tech further alleges that "Defendants' failure to inform Z Tech of the change in formula interfered with Z Tech's relationship with its customers, resulting in the loss of current customers and the inability to attract new ones." *Id.*, ¶ 126.

The corresponding paragraphs of the Proposed Third Amended Complaint are materially identical to those of the SAC. ECF No. 58-1, ¶¶ 119–28.

#### *i. Economic Loss Doctrine*

Nouryon argues that the economic loss doctrine bars Z Tech's tort claims. ECF No. 50, PageID.547–51.

The doctrine applies for the same reasons set forth above. Count VIII arises from the same commercial sale of goods as Count VI. Further, Z Tech seeks exclusively economic losses: "the loss of current customers and the inability to attract new ones." ECF No. 49, ¶ 126. These are quintessential economic losses. *See Lubrizol Corp.*, 790 F. App'x at 777

(economic losses are, for instance, "the lost sales caused by its poor performance").

For these reasons, Z Tech's tortious interference with a business relationship and/or expectancy claim is barred by the economic loss doctrine. Accordingly, Count VIII is **DISMISSED** as to Nouryon.

Because the economic loss doctrine bars Count VIII, the Court need not reach Nouryon's remaining arguments. However, the Court notes that Count VIII would fail for a separate reason: Z Tech does not allege all the elements of a claim of tortious interference with a business relationship or expectancy.[2]

Under Michigan law, the elements of tortious interference with a business relationship or expectancy require that the purportedly interfering defendant knew of the relationship or expectancy. *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 90 (2005).

Z Tech only alleges that "Defendants knew or reasonably should have known that the paint was intended for Z Tech customers because Defendants knew Z Tech's business and that Z Tech could not use so much paint in Z Tech's internal operations." ECF No. 49, ¶ 122. However, this conclusory assertion about *all* Defendants is a legal conclusion and does not help Z Tech survive a motion to dismiss. *Twombly*, 550 U.S. at

[2] Nouryon raised this argument, ECF No. 50, PageID.555, and Z Tech failed to respond.

555–56.

Accordingly, Count VIII would fail on this ground as well.

*ii. Proposed Third Amended Complaint*

The same analysis resolves Z Tech's motion for leave to amend as to this count. Count VIII of the Proposed Third Amended Complaint is identical to Count VIII of the Second Amended Complaint in every respect material here. ECF No. 49, ¶¶ 120–29; ECF No. 58-1, ¶¶ 119–28. Nor is there a material difference in the remainder of the pleadings that would weigh on the disposition of this count.

Accordingly, for the same reasons as articulated above, Count VIII of the proposed amendment would be barred by the economic loss doctrine. Thus, leave to amend as to Count VIII is **DENIED AS FUTILE** as to Nouryon.

*iii. Dismissal with Prejudice*

Z Tech has had the benefit of Nouryon's arguments through two rounds of briefing and two opportunities to amend in response to them. The Proposed Third Amended Complaint is what Z Tech would plead if given leave, and it reproduces Count VIII verbatim in every respect material here. Given the chance to amend, Z Tech has answered that question by bringing the same claim that is equally subject to dismissal. Accordingly, Count VIII is dismissed **WITH PREJUDICE** as to Nouryon.

**3. Silent Fraud**

In Count IX, Z Tech alleges silent fraud against all defendants. ECF No. 49, ¶¶ 130–36. Specifically, Z Tech alleges that "All Defendants knew that the COA and other paperwork indicated that BYK was the paint manufacturer, which was false." *Id.*, ¶ 131. Z Tech further alleges that "each Defendant had a duty to warn Z Tech of the increased risk they had created so that Z Tech could take the appropriate precautions to address the increased risk." *Id.*, ¶ 134. Thus, Z Tech alleges "each Defendant had a legal duty to inform Z Tech of the violation. The Defendants failed to do so, and such failure resulted in damage to Z Tech." *Id.*, ¶ 135.

The corresponding paragraphs of the Proposed Third Amended Complaint are materially identical. ECF No. 58-1, ¶¶ 129–35.

*i. Economic Loss Doctrine*

Nouryon argues that the economic loss doctrine bars Z Tech's tort claims. ECF No. 50, PageID.547–51.

The doctrine applies for the same reasons set forth above. Count IX arises from the same commercial sale of goods as referenced in Count VI and Count VIII. And the alleged losses are the same economic losses pleaded under Count VI.

Z Tech argues that Defendants' conduct after the sales of BYK 155 removes this claim from the reach of the economic loss doctrine. Z Tech argues that after "the product that Defendants provided to Z Tech began to break down and lose pigment days or weeks after application,

Defendants . . . remain[ed] silent, continue[d] concealing their fraud, and hope[d] that Z Tech [would] never discover[] the fraud." ECF No. 53, PageID.586–87. "With each additional instance of fraud, Defendants delayed Z Tech's discovery of the true state of affairs and the cause of the defective paint, which was causing them to lose customers, orders, and potential new customers. At the same time, its reputation was also being irreparably damaged." *Id.* at PageID.587. The scope of this fraud, Z Tech argues, "elevates the case beyond simple contract law, allowing recovery of tort damages, such as for fraud." *Id.*

The Court does not agree.

First, post-sale concealment does not fall within the single exception to the economic loss doctrine: fraud in the inducement. Conduct occurring after the sales at issue took place cannot be said to have induced the sale.

Second, the losses Z Tech attributes to the delay—lost customers, lost sales, reputational harm—are the same economic losses Z Tech could have allocated by contract, as discussed above.

Third, an exception for post-sale concealment to the economic loss doctrine would displace the rule. A plaintiff whose fraud claim would be otherwise barred could always plead that the defendant failed to disclose the fraud *after* the sale and thereby convert a fraud claim barred by the economic loss doctrine into a permitted one. However, because Michigan bars all fraud claims arising from the commercial sale of goods *except*

when the fraud induced the contract, s*ee Shaker*, 625 F. Supp. 3d at 633; *Huron Tool & Eng'g Co.*, 209 Mich. App. at 371, this cannot be.

For these reasons, Z Tech's silent fraud claim is barred by the economic loss doctrine. Accordingly, Count IX must be **DISMISSED** as to Nouryon.

Because the economic loss doctrine bars Count IX, the Court need not reach Nouryon's remaining arguments. However, the Court notes that Count IX would independently fail because Z Tech does not allege all the elements of a claim of silent fraud.

Under Michigan law, for the suppression of information to constitute silent fraud, there must exist a legal or equitable duty of disclosure. *Roberts v. Saffell*, 280 Mich. App. 397, 404 (2008), *aff'd*, 483 Mich. 1089 (2009). "[A] legal duty to make a disclosure will arise most commonly in a situation where inquiries are made by the plaintiff, to which the defendant makes incomplete replies that are truthful in themselves but omit material information." *Hord v. Env't Rsch. Inst. of Michigan*, 463 Mich. 399, 412 (2000). Failure to allege that plaintiff has made a specific inquiry will result in dismissal of the claim. *Id.*

Nouryon argues that "[t]he SAC pleads no inquiry by Z Tech to Nouryon, no relationship giving rise to a duty to disclose, and no incomplete response by Nouryon." ECF No. 50, PageID.553.

It is correct that Z Tech fails to allege that it made an inquiry to Nouryon.

Z Tech does not respond to this argument. Instead, Z Tech argues that "Nouryon was legally required to provide truthful and accurate information in the SDS, including the correct identification of the manufacturer." ECF No. 53, PageID.591 (citing 29 C.F.R. § 1910.1200 and 42 U.S.C. § 11021).

However, as Z Tech recognizes, ECF No. 49, PageID.501, "OSHA does not create a private cause of action," *Chilcutt v. Ford Motor Co.*, 662 F. Supp. 2d 967, 974 (S.D. Ohio 2009). Indeed, "OSHA regulations can never provide a basis for liability." *Ellis v. Chase Commc'ns, Inc.*, 63 F.3d 473, 478 (6th Cir. 1995).

Thus, Z Tech has failed to allege that a legal or equitable duty to disclose exists. Accordingly, Count IX would fail on this ground as well.

*ii. Proposed Third Amended Complaint*

Once again, this same analysis resolves Z Tech's motion for leave to amend as to this count. Count IX of the Proposed Third Amended Complaint is identical to Count IX of the Second Amended Complaint in every respect material here. ECF No. 49, ¶¶ 130–36; ECF No. 58-1, ¶¶ 129–35. Nor is there a material difference in the remainder of the pleadings that would weigh on the disposition of this count.

Accordingly, for the same reasons as articulated above, Count IX of the proposed amendment would be barred by the economic loss doctrine. Thus, leave to amend as to Count IX is **DENIED AS FUTILE** as to Nouryon.

*iii. Dismissal with Prejudice*

Z Tech has had the benefit of Nouryon's arguments through two rounds of briefing and two opportunities to amend in response to them. The Proposed Third Amended Complaint is what Z Tech would plead if given leave, and it reproduces Count IX verbatim in every material respect. Thus, the Court need not predict whether Z Tech *could* cure the defects in this count: Z Tech has answered that question itself: it could not. Accordingly, Count IX must be dismissed **WITH PREJUDICE** as to Nouryon.

**4. Unjust Enrichment**

Nouryon argues that Z Tech's unjust enrichment claim fails because Z Tech did not allege that it conferred a direct benefit on Nouryon. ECF No. 50, PageID.556.

Because Michigan law has recognized unjust enrichment where a defendant has retained a benefit as a result of misleading conduct, even where the plaintiff did not directly confer that benefit on the defendant, the Court disagrees with Nouryon's position.

Under Michigan Law, the elements of an unjust enrichment claim are "(1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain." *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991) (citation omitted).

Z Tech has not alleged that Nouryon has received a benefit from Z Tech. Instead, Z Tech alleges that Nouryon "received" the benefit that

BYK received "under the conspiracy theory." ECF No. 49, ¶ 138. That qualifier is essentially an admission that Nouryon did not receive a direct benefit.

Z Tech argues that Nouryon "must have received a percentage of the amount Z Tech paid for the additive." ECF No. 53, PageID.594.

Michigan courts have not squarely decided whether a plaintiff needs to show a direct benefit to the defendant to sufficiently allege an unjust enrichment claim, though some have held they do. *See Smith v. Glenmark Generics, Inc.*, USA, No. 315898, 2014 WL 4087968 (Mich. App. Aug. 19, 2014) ("[C]aselaw does not specifically state that the benefit must be received directly from the plaintiff, but these decisions make it clear that it must."). Still, the governing caselaw implies that defendants can be liable for unjust enrichment, even if they did not receive a direct benefit from the plaintiff. As the Court of Appeals of Michigan has explained:

> A third party is not unjustly enriched when it receives a benefit from a contract between two other parties, where the party benefited has not *requested the benefit or misled the other parties*.... Otherwise stated, the mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution.

*Karaus v. Bank of New York Mellon*, 300 Mich. App. 9, 24 (2012) (citation omitted) (emphasis added).

When applying this precedent, courts in this district have held that

defendants can be liable for unjustly retaining indirect benefits through deception. *Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 925–26 (E.D. Mich. 2019) (denying defendant's motion for judgment on the pleadings where defendant assisted co-conspirator in circumventing contract with plaintiff through deception); *Bright Works Engr., PLLC v. Camatic Seating Inc.*, No. 25-CV-10446, 2025 WL 3157871, at *8 (E.D. Mich. Nov. 12, 2025) (denying motion to dismiss unjust enrichment claim where law firm misleadingly assured expert that client would pay them to continue receiving expert services). Indeed, the *Roche* court concluded that "where the third party benefits by virtue of taking a misleading action, there may be a right of restitution against that party because . . . it would be unjust for the third party to retain its indirect benefit. *Roche*, 427 F. Supp. 3d at 926.

Z Tech alleges that Nouryon either knowingly filled containers with BYK labeling—representing that BYK was the manufacturer—or filled unlabeled containers knowing that they would later be labeled by BYK in a manner that would deceive unsuspecting customers as to the genuine manufacturer. ECF No. 49 ¶¶ 30, 39. By actively engaging in the deception, any benefits that Nouryon received from doing so would be unjustly retained. Nouryon need not communicate directly with ultimate customers like Z Tech to mislead them. In *Roche*, the defendant sent statements for his co-conspirator to relay to the plaintiff to hide their scheme. *Roche*, 427 F. Supp. 3d at 914–15. Regardless of how it engages

in the scheme, a defendant's retention of benefits which are not "completely innocent and without knowledge," are more likely unjust. *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 197 (2006).

Nouryon argues that Z Tech is not entitled to equitable relief because an express contract governs this case. ECF No. 50, PageID.557. The Court disagrees. The Michigan Court of Appeals has expressly allowed Z Tech's pleading strategy. *Morris Pumps*, 273 Mich. App. at 199–200 ("[W]e perceive no reason why a plaintiff should not be allowed to simultaneously and alternatively assert a contract claim against one defendant with whom an express contract exists and a quantum meruit claim against a different defendant with whom no express contract exists.").

However, while Michigan substantive law does not prohibit this claim, Z Tech must still meet the requirements of federal procedural law. As previously discussed, Z Tech's unjust enrichment claim for the indirect benefit Nouryon obtained only survives if it can allege deception. "Given that this unjust enrichment claim stems from the alleged fraudulent activity . . . the Court finds that the unjust enrichment claim is grounded in fraud and must meet Rule 9(b)'s pleading requirements." *Boston v. Est. of Clark*, No. 11-14935, 2012 WL 4048877, at *7 (E.D. Mich. Sept. 13, 2012) (Edmunds, J.). Under Federal Rule of Civil Procedure 9(b), Z Tech must allege the "the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the

fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson*, 447 F.3d at 877 (6th Cir. 2006).

Viewing the complaint in the light most favorable to Z Tech, the Court holds that it has cleared 9(b)'s particularity requirements. Although Z Tech has presented several alternative theories according to which the defendants have engaged in fraud, the Court will focus on Z Tech's primary theory. Under that theory, Nouryon shipped additives with BYK labeling and documentation. ECF No. 49, ¶¶ 39, 105. Z Tech posits that "each COA associated with each container appears to originate from BYK, as it contains BYK's name, logo, and other identifying information." *Id.*, ¶ 107. Thus, the content of the fraudulent communication exists in the various labels and documents provided to Z Tech, which list BYK as the supplier. And, according to the allegations, the parties failed to disclose the true manufacturer so that they could sell an inferior product at a price premium. ECF No. 49, ¶¶ 115–18.

By doing so, Z Tech incurred "lost customers and sales," "the implementation of more robust health and safety measures for its employees," "time and resources spent to find a replacement supplier," and the cost of "thousands of gallons of Z Tech's paint being unusable." *Id.*, ¶¶ 25, 92, 110.

Timewise, this fraudulent scheme began sometime after 2015, when Z Tech began using BYK 155. ECF No. 49, ¶ 43. At the latest, it started in 2022, when Z Tech's customers began complaining about BYK

155/50. *Id.*, ¶ 49. In that time frame, under Z Tech's alleged scheme, virtually every communication that it received from Nouryon, through BYK, such as container labels, COAs, and SDSs, was fraudulent. *Id.*, ¶¶ 106–08.

While Z Tech may not identify a precise point in time or an exact location for the communications, when the allegations describe a continuing pattern of the same conduct like this, they are sufficient to meet the 9(b)'s particularity standard. Courts in this circuit routinely uphold allegations of systemic fraudulent conduct over a multi-year period. *See As You Sow v. AIG Fin. Advisors, Inc.*, 584 F. Supp. 2d 1034, 1046 (M.D. Tenn. 2008) ("In this district, Rule 9(b) has been held satisfied by allegations of systematic fraudulent conduct over the course of a twelve (12) year period."); *Iseman v. Werner*, No. 3:19-CV-365-TRM-DCP, 2020 WL 4674113, at *8 (E.D. Tenn. Aug. 12, 2020) ("Plaintiffs have alleged the general time frame of the alleged intentional misrepresentations, which took place during several conference calls and in Defendant's opinion letter."); *Colbert & Winstead, PC 401(k) Plan v. AIG Fin. Advisors, Inc.*, No. 3:07-cv-1117, 2008 WL 2704367, at *12 (M.D. Tenn. July 8, 2008) (plaintiff's allegation that defendant committed fraud "during a specified six-month period" was sufficient to meet the "heightened pleading requirement of Rule 9(b)")).

Critically, Z Tech has satisfied the Sixth Circuit's requirements by identifying "characteristic examples that are illustrative of the class of

all claims covered by the fraudulent scheme." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 470 (6th Cir. 2011) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 513 (6th Cir. 2007)). By pointing to various communications within the relevant time period where Nouryon—at least according to Z Tech's primary theory—communicated its product as BYK's, Z Tech has met its burden.

Accordingly, Nouryon's Motion to Dismiss Count X is **DENIED**.

*i. Proposed Third Amended Complaint*

The same analysis resolves Z Tech's motion for leave to amend as to this count. Count X of the Proposed Third Amended Complaint is identical to Count X of the Second Amended Complaint in every respect material here. ECF No. 49, ¶¶ 137–41; ECF No. 58-1, ¶¶ 136–41. Nor is there a material difference in the remainder of the pleadings that would weigh on the disposition of this count.

Because the unjust enrichment claim in the Second Amended Complaint states a plausible claim, it would be redundant, unnecessary, and in that sense futile to allow an identical amendment of Count X to be filed in the Third Amended Complaint. Accordingly, leave to amend as to Count X is **DENIED AS FUTILE** as to Nouryon.

**5. Conspiracy**

In Count XI, Z Tech alleges civil conspiracy against all defendants. ECF No. 49, ¶¶ 142–49. Specifically, Z Tech alleges that "BYK, Omya, and Nouryon constituted a combination of two or more persons who acted

in concert for the unlawful purpose of defrauding Z Tech by substituting a non-conforming, inferior product, BYK 155/50, for the specified product, BYK 155." *Id.*, ¶ 145. Z Tech alleges that "[t]his claim for civil conspiracy is predicated upon the underlying torts of fraudulent inducement, fraudulent misrepresentation, silent fraud, and tortious interference committed by the Defendants as alleged in the preceding Counts of this Complaint." *Id.*, ¶ 146.

Z Tech further alleges that

> Defendants engaged in concerted action to accomplish this unlawful purpose. This concerted action included the coordinated concealment and agreement to fulfill purchase orders for BYK 155 with a product manufactured by Nouryon without disclosure, the joint material misrepresentation of holding out the Nouryon-manufactured 155/50 as the genuine BYK-manufactured product Z Tech required, and the mutual assistance provided by each Defendant to the other—specifically in the manufacturing, marketing, and distribution phases—to ensure the scheme's success.

*Id.*, ¶ 147.

The corresponding paragraphs of the Proposed Third Amended Complaint are materially identical. ECF No. 58-1, ¶¶ 172–79.

*i. Failure to Plead an Agreement*

Nouryon argues that the conspiracy claim against Nouryon fails to satisfy Federal Rule of Civil Procedure 9(b). ECF No. 50, PageID.551–54. Specifically, Nouryon argues that "[t]he SAC alleges no specific agreement, communications, or acts by Nouryon evidencing concerted

unlawful conduct—only conclusory assertions that defendants 'intentionally provided' a product and didn't inform Z Tech of the identity of the manufacturer." ECF No. 50, PageID.553.

Nouryon's position here is correct.

Where, as here, the underlying tort to a conspiracy claim "is fraudulent in nature, courts have required that plaintiffs meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) to withstand dismissal." *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1341 (E.D. Mich. 2011).

Under Michigan law,

> A civil conspiracy is a combination of two or more persons, who by some concerted action, agree to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by unlawful means. A conspiracy requires proof of an intentional agreement. Under Michigan law, it is sufficient if the circumstances, acts and conduct of the parties establish an agreement in fact. Furthermore, conspiracy may be established by circumstantial evidence and may be based on inference.

*Id.* (cleaned up).

Z Tech alleges the following predicate acts for the civil conspiracy claim: "fraudulent inducement, fraudulent misrepresentation, silent fraud, and tortious interference committed by the Defendants as alleged in the preceding Counts of this Complaint." ECF No. 49, ¶ 146. The Court has dismissed each of these claims with the exception of fraudulent inducement, and that is because this Count is pleaded against BYK

alone, which has not moved to dismiss the claim.

However, Z Tech does not allege facts stating that Nouryon joined any agreement to induce Z Tech's purchases in the first place. Instead, the conspiracy described by Count XI relates to a purported agreement to substitute a different product for the one Z Tech ordered and to conceal that substitution. This purported agreement took place *after* Z Tech was purportedly induced to enter its contract with BYK.

Even as to the purported agreement to substitute a different product for the one Z Tech ordered, the complaint pleads no facts raising the inference of an agreement beyond speculation. Z Tech identifies no communication between Nouryon and the other Defendants in which an agreement was reached and no time at which the agreement was reached. Z Tech's allegation that the Defendants reached an "agreement to fulfill purchase orders for BYK 155 with a product manufactured by Nouryon without disclosure," *id.*, ¶ 147, is conclusory and speculative.

Nor does the conduct that Z Tech describes allow for the inference of an agreement: Z Tech alleges that the "coordinated concealment" included a "joint material misrepresentation of holding out the Nouryon-manufactured 155/50 as the genuine BYK-manufactured product Z Tech required." *Id.*; *id.,* ¶ 105 ("Nouryon has marked the containers with BYK's information to make it appear that BYK, not Nouryon, manufactured the product."). Elsewhere, however, Z Tech alleges that it is possible that "BYK ordered unlabeled containers from Nouryon." *Id.*, ¶

30(f). Regardless, affixing BYK's information to the containers containing BYK 155 and BYK 155/50 is not evidence of an agreement to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by unlawful means.

For these reasons, Z Tech's civil conspiracy claim fails to state a claim. Accordingly, Count XI is **DISMISSED**.

Because Count XI fails to state a claim, the Court need not reach Nouryon's remaining arguments.

*ii. Proposed Third Amended Complaint*

The same analysis resolves Z Tech's motion for leave to amend as to this count. Count XII of the Proposed Third Amended Complaint is identical to Count XI of the Second Amended Complaint in every respect material here. ECF No. 49, ¶¶ 142–49; ECF No. 58-1, ¶¶ 172–79. Nor is there a material difference in the remainder of the pleadings that would weigh on the disposition of this count.

Accordingly, for the same reasons as articulated above, Count XI of the proposed amendment fails to state a claim. Thus, leave to amend as to Count XI is **DENIED AS FUTILE** as to Nouryon.

*iii. Dismissal with Prejudice*

Z Tech has had the benefit of Nouryon's arguments through two rounds of briefing and two opportunities to amend in response to them. The Proposed Third Amended Complaint is what Z Tech would plead if given leave, and it reproduces Count XI verbatim in every respect

material here. Those claims remain inadequate. Accordingly, Count XI is dismissed **WITH PREJUDICE**.

### 6. Federal Civil RICO

The Proposed Third Amended Complaint adds a Federal RICO count under 18 U.S.C. § 1962(c). ECF No. 58-1, ¶¶ 142–71.

Z Tech alleges that "[e]ach Defendant is a 'person,'" and that Defendants and their officers, directors, and other employees can engage in unlawful activity, chargeable as mail and/or wire fraud (Section 1341 and Section 1343, respectively), within the meaning of 18 U.S.C. § 1961(1)." *Id.*, ¶ 144.

Z Tech alleges that the "individual officers, directors, and other employees of each company . . . took part in the fraudulent conduct, working cooperatively to maintain the secrecy of their manufacturing processes and the identity of the product being sold to BYK's customer." *Id.*, ¶ 146. Z Tech further alleges that "[s]uch individuals from each company form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961 (4), in order to conduct their illegal activity through a continuing pattern of racketeering activity." *Id.*, ¶ 147.

Z Tech alleges that "[e]ach Defendant committed at least two predicate acts within the past 10 years, carried out by the same individuals and entities, using the same methods, and against the same company, Z Tech, and its employees." *Id.*, ¶ 152. Further, Z Tech alleges

that "[t]he illegal conduct took place over a lengthy period of at least 2 years." *Id.*, ¶ 153.

Z Tech alleges that Defendants

> committed acts constituting indictable offenses under 18 U.S.C. §§ 1341 and 1343 in that they devised or intended to devise a scheme or artifice to defraud Z Tech by surreptitiously selling it inferior, low quality, and cheap material manufactured by Nouryon-a company that specializes in manufacturing chemicals for household items and not, like BYK, for industrial applications.

*Id.*, ¶ 157. Z Tech alleges that the scheme "used the United States' mails and/or wires to transmit messages among the three and their victims across state lines." *Id.*, ¶ 159. Further, Z Tech alleges that Defendants acted "with knowledge that the use of the mails or wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended." *Id.*, ¶ 162. Z Tech also alleges that Defendants "could not have done so unless they used the U.S. mails or private or commercial interstate carriers or interstate wires." *Id.*, ¶164. Z Tech further alleges that it "was induced to send payments for the material using the United States mails and/or wire." *Id.*, ¶166. Lastly, Z Tech alleges that "[e]ach of Defendants' individual shipments constitutes a separate fraudulent act or predicate offense, as set forth above in the cause of action for fraudulent misrepresentation." *Id.*, ¶165.

The Court finds that amending the complaint to add this claim is futile.

To state a claim under § 1962(c), "a plaintiff must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir.2006)). "To establish 'racketeering activity,' plaintiff must establish each of the elements of one of predicate crimes outlined by 18 U.S.C. § 1961(1)(A) or (B)." *Franklin Constr. Grp., LLC v. Shore*, 793 F. Supp. 3d 928, 946 (M.D. Tenn. 2025).

Z Tech alleges two predicates: mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343. ECF No. 58-1, ¶¶ 144, 157. No other predicate is alleged.

> A person commits mail fraud if he devises a scheme to defraud, executes the scheme using the mail or causing it to be used, and acts with the intent to defraud. Wire fraud requires similar proof, except that instead of alleging use of the mail to execute the scheme, the plaintiff must allege that the person used or caused to be used a wire communication in interstate commerce in furtherance of the scheme.

*Fremont*, 811 F. Supp. 2d at 1337 (E.D. Mich. 2011) (citation omitted).

Mail fraud and wire fraud must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). Defendants argue that Z Tech has failed to do so. ECF No. 65, PageID.691; ECF No. 66, PageID.714. The Court agrees.

Under Rule 9(b), a plaintiff must "specify the statement they

contend is fraudulent, identify the speaker, time, and location of the statement, and explain why the statement is indeed untrue or a misrepresentation." *Rautu*, 557 Fed. Appx. at 414.[3]

In the context of wire fraud, a plaintiff must make "some allegation that telephone calls were made, the dates on which they were made, the identity of the persons making them, and the nature of the alleged misrepresentation." *Wozniak v. Sinsel*, No. 7-2927, 2007 WL 4510262, at *3 (N.D. Ohio Dec. 18, 2007); *Heinrich*, 668 F.3d at 405 (6th Cir. 2012) ("[T]he Heinrich plaintiffs have still failed to allege wire fraud with the required particularity since Amanda Heinrich's affidavit does not include the date she received the allegedly fraudulent email from the defendants."). Similar particularity is required in the context of § 1341. *Cf. id.*

Z Tech has failed to allege any dates on which mailing or wire communication was used. Z Tech has failed to allege the identity of persons making any such mailing or wire communications.

Instead, Z Tech vaguely alleges that Defendants acted "with knowledge that the use of the mails or wires *would follow* in the ordinary course of business"; that Defendants "could not have done so unless they

[3] In its motion to amend, Z Tech does not engage with Rule 9(b) at all. *See* ECF No. 58. Nor does Z Tech point to any specific allegations pertaining to the mailing and wire communications. *Id.* In other words, Z Tech fails to address the ground on which the Court denies its motion to leave as to this count.

used the U.S. mails or private or commercial interstate carriers or interstate wires"; and that Z Tech "was induced to send payments for the material using the United States mails and/or wire." ECF No. 58-1, ¶¶ 162, 164, 166. These allegations fail to allege that a particular mailing or wire communication occurred, and fail to supply a date, sender, recipient, or content.

Z Tech has failed to plead the elements of mail and wire fraud with sufficient specificity, and has thus failed to adequately allege or proffer evidence of the predicate acts of mail and wire fraud which form the basis of its RICO claim. Because Z Tech has failed to satisfy Rule 9(b)'s particularity standard, the Court need not reach Defendants' other arguments. Accordingly, leave to amend to add this count is **DENIED AS FUTILE** as to Nouryon.

The Court recognizes that the Proposed Third Amended Complaint also contemplates realleging claims against BYK and Omya that were not challenged in the SAC. There is no need to grant any amendment as to those claims, which remain pending, so the motion to amend is **DENIED** as to those claims. As to the new proposed RICO Count, that claim as it is alleged against BYK and Omya suffers from the same defects that cause it to be dismissed against Nouryon. For that reason, the motion to amend will be **DENIED** in full as to all defendants.

## IV. CONCLUSION

For the reasons stated above, **GRANTS IN PART AND DENIES IN PART** Defendant Nouryon's motion to dismiss (ECF No. 50), **DENIES AS FUTILE** Z Tech's motion to amend as to all Defendants (ECF No. 58), and **DISMISSES** all of Z Tech's claims against Nouryon **WITH PREJUDICE** with the exception of Z Tech's unjust enrichment claim against Nouryon, which states a plausible cause of action.

**SO ORDERED.**

Dated: September 30, 2026

s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE